SAM KENNEDY, Appellant, v. STATE BOARD OF ASSESSMENT AND
REVIEW, Appellee.

No. 44068.

NOVEMBER 23, 1937.

E. B. Stillman, for appellant.

John H. Mitchell, Attorney General, and Clair E. Hamilton, Spec. Asst. Attorney General, for appellee.

PARSONS, J.—Plaintiff in this case filed a petition in the district court of Cerro Gordo County, Iowa, setting forth that on the 19th day of May, 1936, he filed with the state board of assessment and review his application asking for refund of sales tax paid for fertilizer, as set out in his application; that this application was presented to the board, and on the 28th of May, 1936, an order was entered by said board, in which the application was denied, and on the same date plaintiff appealed from the decision and order of the state board of assessment and re-

view; that he urges before the court the same reasons for refund of the tax, $91.89, which was illegally demanded of him, and which he, through error and mistake, paid as sales tax, and for all the reasons he asked that he be given refund of the taxes so paid; then followed prayer for decree.

The facts are that Kennedy, the appellant, purchased from the local representative of Swift Company Fertilizer Works, 88,-000 pounds of Swift's Red Steer Fertilizer, at the price of $59.-20 per ton, or a total of $2,604.80; and on April 6, 1935, he purchased of the same company, 74,000 pounds of the same fertilizer at $42.60 per ton, or a total of $1,576.20; and on April 6, 1935, he purchased from the same company 10,000 pounds of another fertilizer at $26.70 per ton, or a total of $133.50; that he paid all together $4594.50 for this fertilizer, and upon this amount he paid a two per cent sales tax, or the sum of $91.89.

Plaintiff set out these matters before the board of assessment and review, and that body refused his application, and he then appealed to the district court of Cerro Gordo County, Iowa.

It appears from the stipulations in the case that the plaintiff is a resident of Cerro Gordo County; that he is an acreage grower of potatoes, onions, and other vegetables, and that he purchased the fertilizer in the amounts set forth in his application filed before the board; that the fertilizer was used on the ground on which plaintiff raised potatoes, onions, etc.; then he set forth the constituent elements of the fertilizers which were all used on the land in the spring of 1935; he set forth the amount of potatoes and other vegetables taken from the land. There was some testimony in the case by various parties as to the use of these fertilizers.

The theory of the plaintiff was that he purchased these fertilizers to use in the ground, and they were absorbed in the potatoes, and other vegetables, and he thereby made himself a processor.

The case was tried to the district court of Cerro Gordo County, Hon. W. H. Kepler presiding, and after the case was fully heard the court entered a decree dismissing the appeal, at plaintiff's costs.. From that the plaintiff appealed to this court.

There are two sections of the Code involved particularly in this appeal, section 6943-f39 and section 6943-f38. The court, after hearing the facts, entered a decree which covers about four pages of the abstract, and in part is as follows:

"Section 6943-f39 of the Code states: 'There is hereby imposed, beginning the 1st day of April, 1934, a tax of two per cent upon the gross receipts from all sales of tangible personal property sold at retail in the State to consumers or users.'

"Section 6943-f38 subd. c provides: 'Retail sale or sale at retail means the sale to a consumer or to any person for any purpose, other than for processing or for resale, of tangible personal property, etc.'

"The question at issue in this case is whether the use of fertilizer for the promotion of the growth of plants, some of the elements of the fertilizer going into the plants themselves, is a processing of tangible personal property.

"Webster in his International Dictionary, Second Edition, 1934 defines processing as follows: 'To subject to some special process or treatment.' 'To subject (esp. raw material) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock for slaughtering, grain for milling, cotton for spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking.'

"The same Dictionary defines a processor as follows: 'One who or that which processes; specif., one who is in the business of converting any agricultural commodity into a marketable form.'

"To grow has been defined: 'To spring up and come to maturity, as a plant; to be developed or produced by vegetation, as a fruit, or by animal processing, as hair. Hence to thrive'; 'To increase in size by a natural and organic process; to increase in bulk by gradual assimilation of new matter into the living organism—said of animals, plants, and their organs.'

"The word 'grow' used as a verb is to cause to grow.

"It appears to the court that the production of crops by means of fertilization and cultivation is a growing of the crops rather than a processing of crops. Processing as I understand the term is a change in the form of the article itself by artificial or natural means. If a processor is one who is in the business of converting agricultural commodities into marketable form, then the grower is not a processor. Technically speaking any change, chemical or otherwise, is a process, but I do not believe the Legislature intended so strained a construction as to call the developing of crops by means of fertilizer a processing. Reference is made to the rule of the defendant relative to seeds. The

court is not bound by the rule of the defendant, but he is concerned with a construction of the Statute. There is a difference, however, in the rule of the defendant as to the tax on seeds and the rule contended for by the plaintiff in the matter of a tax on fertilizer. The seed itself is the thing which starts and is a part of the plant and while some of the elements in the fertilizer go into the plant, the elements in the fertilizer are not ordinarily consumed in the plant in one season. As the court understands the matter, processing is some change made in the natural product as the curing of meats, canning of vegetables and it has been held that the glazing of an eggshell to better preserve the egg is a processing. The growing of the article is not in the common use of the term a processing, but some change in the article after it is grown by means of special treatment is a processing. The testimony shows that it takes moisture for the chemical reaction to be produced in order that the fertilizer may be of some use to the growing crops. Therefore, according to the testimony, the condition of the ground in which the fertilizer is used has something to do with the effect of the fertilizer upon the crops.''

''The Statute refers to processing of tangible personal property. The placing of fertilizer in the soil makes it a part of the real estate. It has been repeatedly held that growing crops are a part of the real estate and if what the plaintiff claims is processing, it is a processing of the real estate and not a tangible personal property.''

The court calls attention to the fact that placing fertilizer in the soil makes it a part of the real estate, and that growing crops are part of the real estate, and therefore are not a tangible personal property. The court dismissed the appeal. Decree and opinion were entered on the record of the district court of Cerro Gordo County, Iowa, November 5, 1936.

■■■ The legislature of the state evidently viewed this as the law, and the 47th General Assembly passed chapter 196 dealing with the sales tax, and in that made a definition of '' 'Retail sale' or 'sale at retail' '', and interpolated in same the following exception: ''But does not include commercial fertilizer or agricultural limestone.'' Section 1. So as we view it, this is the legislative construction of the act, a recognition of what was meant by the passage of the act; that in fact, the original act did not exempt commercial fertilizers and agricultural limestone, and the legislature wanted it in, therefore amended the statute.

▐█▌ Taxation is the rule, not the exception. All retail purchasers, under the provisions of this section of the Code of 1935, were bound to observe that section as it stood. The taxing power is now prohibited by the 47th General Assembly amendment from including commercial fertilizers and agricultural limestone in sales tax. The passage of the act of the 47th General Assembly had no retroactive effect, and to hold otherwise than was held in this case by the district court, we would have to hold that the statute was retroactive. The plaintiff's claims were unwarranted at the time payment was made, and the tax collected. Under the statute, such a tax could not now be claimed. And for these reasons the decision of the lower court is hereby affirmed.—Affirmed.

HAMILTON, C. J., and SAGER, STIGER, MITCHELL, ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.