ST. FRANCIS HOSPITAL ASSN., APPELLANT, *v.* BOWERS, TAX COMMR., APPELLEE.

(No. 359—Decided December 15, 1954.)

*Mr. Robert E. Scott* and *Mr. D. Deemer Agnew,* for appellant.

*Mr. C. William O'Neill,* attorney general, and *Mr. Jack H. Bertsch,* for appellee.

MONTGOMERY, J.   This proceeding comes before us as an appeal from the Board of Tax Appeals, and involves the assessment of sales tax, aggregating about $23,000, against the appellant St. Francis Hospital Association, which is now a private hospital in the city of Cambridge.

No sales tax was included in the charges against patients for medicines or other supplies; and in the statements or bills rendered patients there was no "breakdown" between the amount charged for drugs and other medicines, and other service.   On that theory the Tax Commissioner, upheld by the Board of Tax Appeals, assessed this tax against all services rendered, all supplies furnished, and all expenses incidental to the operation of the institution.

Two errors are assigned, to wit:

"1. The commission erred in assessing the sales tax on the entire hospital bill of patients at St. Francis Hospital.

"2. The commission erred in assessing the sales tax on medicines and drugs administered patients by appellant St. Francis Hospital."

Counsel for the commission place reliance directly upon the case of *Wilson* v. *Glander, Tax Commr.*, 151 Ohio St., 479, 86 N. E. (2d), 761, the syllabus of which is:

"Where a person sells material to another and in connection therewith furnishes labor or service in applying such material to his customer's property, the entire transaction shall be considered a sale and subject to tax, unless there is a clear separation, in the making or billing of a charge therefor, of the material furnished and the labor or service performed."

It is a far cry from the recapping of automobile and truck tires to the restoration of the health of a human being. And in any event, two suggestions are to be made about this *Wilson case.* In the quoted syllabus there is a limitation upon the proposition in that it is indicated there may be an exemption if there is "a clear separation, in the making or billing of a charge therefor."

In other words, the mere failure to bill the patient for these items separately does not warrant the assessment of the tax if there is a clear separation in the making of the charge. And in concluding the opinion on page 485, the court in the *Wilson case* says: "We do not mean to hold that there must be any particular or scientific method of bookkeeping or invoicing to show a separation of material from labor or service performed, in order for a transaction to be exempt from the sales tax so far as the labor or service is concerned, but we hold that the separation must be such as to clearly show in the invoice or charge what the sale price is for the material and what the charge is for labor or service."

In any event—and with natural hesitancy do we assume to interpret the opinions of a higher court, or place limitations upon them—the later case of *Roberts* v. *Glander, Tax Commr.*, 156 Ohio St., 247, 102 N. E. (2d), 242, seems to us to be directly applicable to the instant case rather than the *Wilson case, supra.* The syllabus in the *Roberts case* is:

"By virtue of the provisions of Sections 5546-1 and 5546-3, General Code, a sales tax is determined by the consideration

for both services rendered and the materials furnished in an upholstery repair job unless the consideration for services is separately stated from the consideration for materials furnished, and a vendor who separately states such consideration on his books of account available to the Tax Commissioner and who collects the proper tax from his customer is entitled to have excepted as a predicate for the sales tax the consideration for services rendered even though he fails to make such separate statement on an invoice delivered to his customer-vendee for such repair job.''

And on page 251 of the opinion the court says:

''Doubtless a purchaser may demand an invoice for, as he may demand an inspection of, goods purchased before payment may be required. On the other hand, it is apparent that the purposes to be served in making the separation of charges are to enable the Tax Commissioner to determine and assess the tax and to enable the vendor to make his tax return to the state and claim his exception by keeping copies of his invoices or by keeping books of account reflecting the breakdown of the charges. And it is quite apparent that such a breakdown on the books of the vendor would be just as efficacious for the purpose and more permanent in form than the retention of invoices as and when made.''

In the instant case one of the examiners for the commission testified that hospital records were available from which specific charges could have been determined, although they were not separated upon any statements rendered. An auditor for the appellant testified to the same effect and further that actual drugs and other medicines furnished would not exceed 20 per cent of the total charge in any event, or $4,600 as distinguished from $23,000.

Frankly, we think that the charge made is an outrageous charge in view of the law and the records actually available from this hospital, even though there was not a strict compliance with the rules of the commission. This conclusion seems to us inevitable on the basis of reason, and on the authority of the *Roberts case, supra,* which, while not specifically doing so, certainly does modify and qualify the *Wilson case, supra.*

In other words, we hold against the appellant in its sug-

gestion that the bills for medicine were purely incidental and that no sales tax should be levied, but we hold with it on its contention that the commissioner erred in assessing sales tax on things other than medicines and drugs.

It follows that, quoting the concluding paragraph in the *Roberts opinion*: "The decision of the Board of Tax Appeals is reversed and the Tax Commissioner is directed to revise the sales tax assessed against the appellant in accordance with this opinion."

*Decision reversed.*

PUTNAM, P. J., concurs.

McCLINTOCK, J., dissenting. The facts in this case, as stated by the appellant in its brief, are as follows: In rendering its statements or invoices to its patients the appellant combined the cost of the nurses, administration costs, the charges for staff doctors, and the drugs all into one charge for drugs or medicines. No separate charge was stated on the invoices for the doctors' fees or the nursing fees or for any of the services rendered by the hospital, there being two items only, drugs and room. Handling the invoices in this manner made the room charge unusually low and the medicine and drug charge unusually high, and appellant claims the reason for doing so was the competition with the Good Samaritan Hospital in Zanesville, Ohio. Good Samaritan was operated by the Catholic Church. The Sisters at Good Samaritan donated their services, thus enabling such hospital to make an unusually low room charge. In order to make their room charge compare favorably with the Good Samaritan Hospital room charges, the appellant, St. Francis, tacked its charges for nurses and doctors and administrative costs onto the medicine and drug charge, and rendered the invoice to the patient with the medical charge actually including everything except the room charge, and in that manner made the medical charge on the invoice many times higher than it actually was. The average markup by hospitals on drugs is around 100 per cent. However, St. Francis marked its up around 800 per cent by including these extra charges.

It is clear that the appellant does not deny that it makes sales of medicines to its patients, nor does it deny that no charge for service is separately stated on its invoices to the patients or on the records it keeps of those invoices. It only contends that by consulting other records, which we do not know about and which were not introduced at the hearing, a proper breakdown could be made.

As to the law of this case, I cite *Wilson* v. *Glander, Tax Commr.,* 151 Ohio St., 479, 86 N. E. (2d), 761, the syllabus of which is as follows:

"Where a person sells material to another and in connection therewith furnishes labor or service in applying such material to his customer's property, the entire transaction shall be considered a sale and subject to tax, unless there is a clear separation, in the making or billing of a charge therefor, of the material furnished and the labor or service performed."

Also, on page 482:

"Section 1464-3, General Code, provides for the adopting and promulgating of rules by the commissioner, and rule 73 of the commissioner, as amended, reads:

"'Repairmen are making sales of all tangible personal property which is transferred by them to their customers in connection with regular repair work.

"'Where the charges for material and labor or service are not separately stated, the tax base for the application of the tax is the full amount charged with no deductions.

"'Where the charges for material and labor or service are separately stated, the tax shall be computed on the charge for material and no tax shall apply on the charge for labor and service.

"'* * *

"'This rule is applicable to all repairmen, including * * * tire retreaders, as well as those engaged in recapping tires * * *.'

"Section 5546-9a, General Code, provides that in case any vendor fails to collect the tax imposed by Section 5546-2 he shall be personally liable for the amount he failed to collect or for an amount of prepaid tax receipts which he failed to cancel.

"The commissioner has the power to make an assessment

against any vendor, based on any information which shall come into the commissioner's possession, for any taxes which the vendor failed to collect or for which he failed to cancel prepaid tax receipts, and any such assessment carries with it a penalty of 15 per cent.''

The *Wilson case* is approved in the case of *Rose* v. *Glander, Tax Commr.*, 153 Ohio St., 363, at page 365, 91 N. E. (2d), 685.

It is claimed in the majority opinion that the case of *Roberts* v. *Glander, Tax Commr.*, 156 Ohio St., 247, 102 N. E. (2d), 242, in some respects is distinguished from the *Wilson case*.

The syllabus in the *Roberts case* is as follows:

''By virtue of the provisions of Sections 5546-1 and 5546-3, General Code, a sales tax is determined by the consideration for both services rendered and the materials furnished in an upholstery repair job unless the consideration for services is separately stated from the consideration for materials furnished, and a vendor who separately states such consideration on his books of account available to the Tax Commissioner and who collects the proper tax from his customer is entitled to have excepted as a predicate for the sales tax the consideration for services rendered even though he fails to make such separate statement on an invoice delivered to his customer-vendee for such repair job.''

And on page 250:

''In the opinion in that case, Judge Stewart said:

'' 'We do not mean to hold that there must be any particular or scientific method of bookkeeping or invoicing to show a separation of material from labor or service performed, in order for a transaction to be exempt from the sales tax so far as the labor or service is concerned, but we hold that the separation must be such as to clearly show in the invoice or charge what the sale price is for the material and what the charge is for labor or service.'

''It must be observed that in that case the court and the writer of the opinion were dealing with a case where no books were kept showing separate charges, the only record of the transaction being an invoice upon which no separate charges were made. In the instant case, the vendor made a complete separation of the charges for labor and materials on his books

so as to reflect all the information required for the commissioner to determine and assess the tax.''

Also, on page 253:

''As to preparing and making such return and establishing its correctness Section 5546-12, General Code, provides:

'' 'Each vendor shall keep complete and accurate records of sales of taxable property, together with a record of the tax collected thereon, which shall in every instance be the amount due under the provisions of this act, and shall keep all invoices, bills of lading, retained parts of cancelled prepaid tax receipts and such other pertinent documents, in such form as the commission may by regulation require. Such records and other documents shall be open at any time, during business hours, to the inspection of the commission * * *.' ''

I am of the opinion, after a careful reading of both these cases, that the *Roberts case* does not modify or overrule in any way the *Wilson case*.

The *Roberts case* says that the books of account may show a breakdown, even though the invoices do not. In the case now under consideration neither the appellant's books of account, nor its invoices, nor any other part of its records carried a breakdown of charges made to a patient.

For the reasons herein stated, I am of the opinion that the decision of the Board of Tax Appeals was not unreasonable or unlawful in finding that the Tax Commissioner did not err in assessing appellant for sales tax it failed to collect or return on the price it charged for medicines.