H. C. ATTEBERY & ASSOCIATES CO., APPELLANT, v.
LIMBACH, TAX COMMR., APPELLEE.

[Cite as H. C. Attebery & Assoc. Co. v. Limbach (1988), 37 Ohio St. 3d 239.]

(No. 87-301—Submitted April 12, 1988—Decided June 29, 1988.)

*Ronald E. Noga,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Mark A. Engel* and *James C. Sauer,* for appellee.

*Per Curiam.* In its first proposition of law, appellant argues that the BTA may consider exemption certificates if they are in compliance with R.C. 5739.03, even if they are overlooked by appellee's agent during the audit. Appellee argues that exemption certificates have not been "obtained" under R.C. 5739.03 if they are not presented to the agent during the audit. For the reasons stated herein, we reverse the BTA's decision.

R.C. 5739.03, during the audit period of March 1, 1976 through February 28, 1979, provided, in pertinent part:

"If any sale is claimed to be exempt under division (E) of section 5739.01 of the Revised Code or under section 5739.02 of the Revised Code, with the exception of divisions (B)(1) to (B)(11) of section 5739.02, the consumer must furnish to the vendor, and the vendor must obtain from the consumer, a certificate specifying the reason that the sale is not legally subject to the tax. * * * The certificate shall be in such form as the tax commissioner by regulation prescribes. If no certificate is furnished or obtained within the period for filing the return for the period in which such sale is consummated, it shall be presumed that the tax applies. * * *"

When making a retail sale, a vendor must collect the tax or obtain an exemption certificate (or obtain the direct payment permit number from the consumer under R.C. 5739.031). The certificate must be obtained within the period for filing the return concerning the questioned sale, or the tax is presumed to apply.

The BTA found that the certificates existed when the audit was conducted, but that they were not presented to appellee's agent. The BTA, citing *Canton Structural Steel Co.* v. *Lindley* (1982), 69 Ohio St. 2d 33, 23 O.O. 3d 52, 430 N.E. 2d 463, ruled that appellant had the additional burden to present the certificates to appellee during the audit. The BTA then found that the certificates could not be used to excuse appellant from collecting the tax because they had not been timely presented to appellee.

Neither the above statute nor *Canton Structural Steel Co.* v. *Lindley, supra,* imposes a duty on the vendor to present the exemption certificates during an audit at the risk of losing their function. R.C. 5739.03 mandates when

a certificate must be obtained, and it allows for additional evidence to establish the exempt nature of the sale. Although it is to a vendor's advantage to present certificates at the first opportunity, the statute does not state *when* they must be presented to appellee. The essence of *Canton Structural Steel Co., supra,* is stated at 36-37, 23 O.O. 3d at 54, 430 N.E. 2d at 465, as follows:

"The essential purpose of exemption certificates is to provide evidence of non-taxability. If certificates cannot be made available during an audit in furtherance of their evidentiary function, then, as a practical matter, it is irrelevant whether a taxpayer possessed certificates at any time prior to the audit. * * *

"* * * The court [of appeals] should have looked to whether the certificates had served their statutory purpose, which because of their unavailability they had not. Is it [*sic*] our view that non-functional certificates of exemption, such as those destroyed by appellee's clerks for which no acceptable copies were available, have not been 'obtained' under R.C. 5739.03." (Footnotes omitted.)

In *Canton Structural Steel Co.,* the certificates had been destroyed and could not be presented. In the instant case, the certificates did exist, were available, but were overlooked. They could have performed their evidentiary function had they been reviewed by appellee's agent. They continue to be available to perform this function, and the BTA should have reviewed them. The time for obtaining an exemption certificate is crucial; but the time for presenting it to the commissioner so that it may perform its evidentiary function is not so critical.

In the instant case the BTA should have reviewed the submitted certificates.[1] The BTA's decision is unlawful and is, therefore, reversed and remanded for reconsideration.

Next, appellant argues that it is not liable for the use tax on its purchases of farm buildings, reasoning that the subcontractor is liable for the tax as the subcontractor is the one who was required to perform the construction contract.

When appellant would receive an order for a building, it would obtain the parts for it from an out-of-state supplier. In the questioned transactions, a subcontractor would then erect the bins. Appellant would bill the customers for the subcontractor's labor. Appellant's president testified that the customers wanted to hold appellant liable if the building did not "work right."

R.C. 5741.02(B) imposes a use tax on each consumer who stores, uses, or otherwise consumes tangible personal property in Ohio. R.C. 5741.01(F), during the audit period, defined "consumer" as:

"* * * [A]ny person who has purchased tangible personal property for storage, use, or other consumption in this state." (136 Ohio Laws, Part I, 1190, 1374-1375.)

In *Dewitt-Jenkins Realty Co.* v. *Glander* (1951), 156 Ohio St. 339, 46 O.O. 191, 102 N.E. 2d 441, we held that contractors who erected prefabricated houses purchased from outside Ohio on foundations built by them were

---

[1] Appellee, in her order, doubted that the overlooked certificates had been timely obtained by appellant. She reasserts these suspicions in her brief. The BTA, however, found that, with certain exceptions, appellant proved that these certificates were within its possession during the audit. On remand, the BTA may review whether the certificates were otherwise proper.

liable for the use tax for their purchases. We determined that the contractor was the "consumer" as defined in the use tax statute.

In *Plowden & Roberts, Inc.* v. *Porterfield* (1970), 21 Ohio St. 2d 276, 50 O.O. 2d 497, 257 N.E. 2d 350, we held that a company that purchased steel from outside Ohio and hired a subcontractor to incorporate it into the framework of a warehouse in Ohio was the consumer of the steel who must pay the use tax for it.

Under these decisions, appellant was the consumer of the building parts and liable for the use tax. As appellee notes in her brief, appellant would have the tax imposed upon the subcontractor who neither purchased, nor paid any consideration for the use of, the parts. This, we hold, is contrary to the definition of "consumer" set forth above. Appellant, the contractor, purchased the materials that were incorporated into the building. It is liable for the use tax. Accord *Al Johnson Constr. Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 29, 71 O.O. 2d 16, 325 N.E. 2d 549; *Botkins Grain & Feed Co.* v. *Lindley* (1982), 1 Ohio St. 3d 64, 1 OBR 105, 437 N.E. 2d 1182; *Jennings & Churella Constr. Co.* v. *Lindley* (1984), 10 Ohio St. 3d 67, 10 OBR 357, 461 N.E. 2d 897.

Accordingly, the BTA's decision is affirmed in part and reversed in part and the cause is remanded to the BTA for reconsideration.

*Decision affirmed in part, reversed in part and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in part and dissent in part. Since I would affirm the decision of the Board of Tax Appeals in all respects, I must respectfully dissent, in part, from the part of the majority opinion that reverses, in part, the decision of the board.